*New-Haven,*
*July,*
*1821.*

Waldo
v.
Spencer.

DUTTON and others *against* TRACY :

IN ERROR.

4    79
67    259

The superior court will take cognizance of a writ of error to revise the judgment of a court under the statute directing proceedings against forcible entry and detainer.

An information *qui tam* under the statute previous to the revision of 1821, will lie for forcible entry and detainer.

A recognizance for prosecution, taken on the issuing of process on a complaint for forcible entry and detainer, before the magistrates signing such process, is valid.

Where process issues against several persons charged with forcible entry and detainer, it is no legal objection to the service, that some of the persons named in such process are not arrested.

Where a jury, empannelled for the trial of forcible entry and detainer, having had the cause, after it was committed to them, two days under consideration, having come into court three times, and having been as often returned to a further consideration, declared, in open court, that they never could agree ; on which the court took back the papers, dismissed the jury, and caused another jury to be summoned and empannelled ; it was held, that this proceeding was legal and unexceptionable.

Where the officer who served the *venire,* in a case of forcible entry and detainer, had previously levied an execution, by virtue of which, according to his return, he had put the complainant in possession, which re-

Dutton
v.
Tracy.

turn the defendants claimed to be false ; this was held to be no ground of exception to the array, as the event of the cause would not affect the officer's liability for a false return.

Though persons qualified to act as jurors in forcible entry and detainer, must, under the statute previous to the revision of 1821, be freeholders, dwelling *near* the estate entered upon or held ; yet this is to be understood *relatively ;* and it is not necessary, that they should reside in the same town in which such estate is.

Where the complainant in forcible entry and detainer, to prove that he was in possession of the land in question, offered in evidence a lease of a barn standing on that land, but not a part of the demanded premises, executed by the complainant to one of the defendants, sixteen years before ; it was held, that such evidence, though feeble in effect, was, in its nature, admissible.

The return of a sheriff on an execution is *prima facie* evidence of the facts stated in it, as affecting strangers to the judgment on which such execution issued.

In forcible entry and detainer, the *title* of the complainant not being in issue, evidence to disprove such title is irrelevant and inadmissible.

Where, in the course of a trial, evidence was given to the jury out of court, under the direction of one of the judges, and afterwards the *same* evidence was given to the court and jury, in open court ; it was held, that this proceeding, though irregular, was insufficient to arrest the judgment.

Against persons convicted of forcible entry and detainer the statute authorizes the taxation of costs ; but as it prescribes no rule, such taxation is a matter of discretion, and is not the subject of error.

Though an execution, issued on a judgment in favour of the complainant in forcible entry and detainer, be levied after a *supersedeas* by writ of error ; yet the court, in the exercise of a sound discretion, will refuse to order restitution of the estate so levied upon, if it appear from the record that the complainant was, with force and strong hand, dispossessed of such estate, by the persons moving for restitution.

This was a proceeding under the statute relating to forcible entry and detainer.

On the 6th of *August*, 1819, *Tracy*, as well in behalf of the state of *Connecticut*, as for himself, made complaint to *William Randall*, Esq. a justice of the quorum, and *Simeon Thomas*, Esq. a justice of the peace, for *New-London* county, shewing, that on the 27th of *July*, 1819, the complainant was put in possession of a certain piece of land, lying in *Chelsea* society in *Norwich*, bounded, &c. by virtue of an execution, issued on a verdict of a jury, and signed by lawful authority ; and said land was, by twig and turf, delivered into the complainant's possession, and he received the same ; that on the night next following, *Asa Dutton, Reuben Willoby, Avery Hempsted, Avery Prentice, Thomas Gibbs* and *George Allen*, with force and arms, made forcible entry into and upon said land, and, against the peace of said state, armed with iron

bars and other instruments of violence, took possession, and still unlawfully hold and detain possession, of said land, and do now continue, with the same strong hand and violence, unlawfully to expel, deforce and drive the complainant out of possession of said land; all which doings of the said *Dutton* and others were and are against the peace of said state, and the statutes thereof, in such case provided, especially the statute entitled " An act directing proceedings against forcible entry and detainer." The complainant, therefore, prayed process against the offenders, that they might be arrested, brought before lawful authority, and an enquiry made pursuant to the statute ; and that he might be restored to the due possession of said land.

*New-London*,
July,
1821.

Dutton
*v.*
Tracy.

Upon this complaint a warrant was issued, signed by the magistrates to whom the complaint was made, requiring the officer to whom it was directed, to arrest the bodies of the persons named in the complaint, " and them safely keep, and have, with all convenient speed, before the subscribing authority, to answer to the foregoing complaint, that due enquiry be made, and that they may be dealt with, as to law and justice may be found to appertain in the premises." The officer was also commanded to summon " eighteen sufficient and indifferent freeholders, and persons dwelling near the land so entered upon, and held as aforesaid," as a jury, to try the forcible entry and detainer complained of. At the bottom of the warrant, and immediately above the names of the subscribing authority, was this entry : " State duty of thirty-four cents is paid on this writ ; and the complainant and *Joseph Thomas* recognized 100 dollars, for prosecution, in due form of law."

By virtue of this process, the officer arrested *Dutton, Willoby, Gibbs* and *Hempstead ;* but no service was made upon *Prentice* and *Allen ;* the officer stating in his return, that he could not find them. He also summoned " eighteen sufficient and indifferent freeholders, of the town of *Norwich*," as a jury.

At a court, held at *Norwich*, on the 10th of *August*, 1819, consisting of *William Randall*, Esq. justice of the *quorum*, and *Simeon Thomas*, Esq. justice of the peace, the persons arrested pleaded in abatement of the complaint and process, 1st, because the complainant had misconceived his form of action, the complaint and process being as well in the name and behalf of the state, as in the name and behalf of said complainant ; when by law no such process is allowed, nor any join-

New-London,
July,
1821.

Dutton
v.
Tracy.

der of such parties is authorized, in this case; 2ndly, because the complaint is for a civil injury, and by law reasonable and legal notice ought to have been given, to appear, answer to, and defend against the same, whereas they were by the sheriff, this day, forthwith arrested, and brought before the court, without any notice or opportunity to prepare their defence; 3rdly, because the complaint is for a joint trespass alleged to have been committed by said *Dutton, Willoby, Hempstead, Prentice, Gibbs* and *Allen*, against all of whom the process issued, and it was never served upon said *Prentice* or *Allen*, nor have they been, in any manner, brought before the court; 4thly, because the bond of recognizance on the warrant to arrest, purports to have been taken, by the said *William Randall*, Esq. justice of the *quorum*, and *Simeon Thomas*, Esq. justice of the peace, jointly, and no bond for prosecution, other than the one so taken, has ever been given.

To this plea the complainant demurred; and the court adjudged it insufficient.

The defendants then pleaded *not guilty*; on which issue was joined. Fourteen of the jurors summoned were empannelled and sworn; and after a full hearing of the parties, the cause was committed to the jury, on *Thursday*, the 12th of *August*, at half past one o'clock in the afternoon. They came into court three times, saying they could not agree; and were as often sent out, by the court. About four o'clock on *Saturday* afternoon, they came again into court, with the papers, and said, it was impossible they should ever agree, and requested the court to take back the papers. The court accordingly took them back; and then, on motion of the complainant, issued a *venire facias* to summon a new jury of eighteen freeholders. On their appearance, the defendants challenged the array, 1st, because the deputy-sheriff, who summoned them, was not disinterested in the cause; he being the the officer, who received, and, according to his return, served, the execution, by virtue of which the complainant claimed possession, whereas the defendants denied, that they were ever put out of possession by such execution; 2ndly, because the jury composing the panel were summoned wholly from the towns of *Bozrah* and *Franklin*, more than four miles from the premises, and no one from the town of *Norwich*, in which the forcible entry and detainer were alleged to have been done, although there then were in that town more than fifty freeholders qualified to act as jurors in the cause; 3rdly, because

one jury of eighteen men had been previously summoned, of whom fourteen were empannelled, and sworn to try the cause, to whom, after a full hearing, it had been committed for a verdict, they being able to attend in court, and being qualified as jurors, but not having agreed on any verdict. The court overruled these exceptions ; and the jury last summoned were empannelled and sworn.

On the trial, the complainant offered in evidence a lease of a certain *barn*, standing on the land described in the complaint, made by him to *Willoby*, in the year 1803, to prove that he, the complainant, was then in possession of the land. The lease was in these words : " It is agreed between *Elisha Tracy*, on the one part, and *Reuben Willoby*, on the other part, that said *Willoby* shall improve the *barn* belonging to said *Tracy*, near the store of *Samuel Tyler*, for one year, commencing on the 1st day of *May*, 1803, at forty dollars *per annum* : said rent to continue until said barn is surrendered by said *Willoby* to said *Tracy*. Witness our hands,

*Reuben Willoby,*
*Elisha Tracy.*"

The defendant objected to the admission of this instrument, because it was a lease of the *barn* only, without the mention of any *land* whatever ; the barn not being now any part of the demanded premises. The court overruled this objection, and permitted the lease to be read in evidence to the jury.

To prove that the complainant was in possession of the premises, on the 27th of *July*, 1819, he offered in evidence a copy of the complaint, made by him to *Erastus Huntington*, Esq. justice of the peace, against *Ichabod Ward*, on the statute prescribing a summary process to enable the owners of lands, &c. to recover possession, demanding of him the possession of the premises,—of the process issued thereon, dated the 15th of *July*, 1819,—of the verdict of the jury in favour of the complainant,—of the judgment of the justice,—of the execution by him granted,—and of the officer's return thereon, dated the 27th of *July*, 1819. To the admission of these copies the defendants also objected ; but the court admitted them.

The defendants, on their part, having claimed, and introduced evidence to prove, that *Willoby* and *Dutton* were in the peaceable possession of the premises, and had been so, for a long time, and that *Tracy* had no right or title thereto, or to the possession thereof ; and *Tracy*, on the other hand, having claimed title to the premises, by virtue of more than fifteen

*New-London,*
July,
1821.

Dutton
*v.*
Tracy.

years possession, and having offered evidence to prove such possession ; the defendants, claiming and proposing to prove, that the persons having title to the premises, had, during the whole period of *Tracy's* pretended possession, been beyond seas, offered in evidence the copy of a deed of the premises, dated the 18th of *February,* 1768, from *Eleazer Fitch,* the former proprietor, to *Stephen Apthorp,* a person, who has ever since been absent from this state, beyond seas. This evidence, being objected to by the complainant, was rejected by the court.

A verdict being returned for the complainant, the defendants moved in arrest of judgment, 1st, on the ground that the complaint was insufficient ; 2ndly, because testimony was irregularly and improperly received by the jury, during the trial. The facts on which this exception is founded, are these. After the jury were empanelled, it was publickly proposed that they should view the premises, under the direction of the court and the care of the sheriff. The court having been adjourned, at the court-house in *Norwich,* on the 17th of *August,* from half past one o'clock to three o'clock in the afternoon, for this purpose, one of the court, viz. *Simeon Thomas,* Esq. (the other having viewed the premises on a former day) and the sheriff, went with the jury upon the premises, and while there, in the absence of the defendants and their counsel, Justice *Thomas,* at the request of the complainant, swore two witnesses, viz. *William Tracy* and *Elijah Backus,* who gave testimony to the jury relative to the premises, and the forcible entry, and detainer thereof by the defendants; after which they all returned to the place of holding the court, and the same testimony was given to the court and jury in open court. This motion the court overruled as insufficient ; and rendered judgment on the verdict, that the complainant should be reseised and put in possession of the premises, according to the directions of the statute ; and that he should recover of the defendants his costs of suit, taxed at 104 dollars, 97 cents. The bill of costs included 2 dollars, 92 cents, for summoning the first jury ; 7 dollars, for their fees ; 13 dollars, 16 cents, for the travel and attendance of divers witnesses before the same jury ; 50 cents for the *venire* for the second jury ; 2 dollars, 54 cents, for summoning them ; 12 dollars for the sheriff's attendance ; 33 dollars, 80 cents, for the fees of the court ; and 3 dollars for the copy of Justice *Huntington's* record.

The defendants brought a writ of error in the superior

court, assigning for error the several decisions of the court be-
fore mentioned. The complainant, now defendant in error, pleaded in abatement to the jurisdiction, on the ground that the proceedings and judgment of a court for the trial of forci-
ble entry and detainer were not the subject of revision in a higher court, by writ of error.

At the same time, *Dutton* and *Willoby,* two of the plaintiffs in error, filed a written motion, stating, that on the 19th of *August,* 1819, the present plaintiffs in error prayed out a writ of error to reverse the judgment now complained of, which was duly served and returned to the next *September* term of the superior court ; when the defendant in error pleaded in abatement, among other matters, that the writ of error was signed before the judgment complained of was rendered ; that the superior court, on the 7th of *October,* 1819, gave judgment that such writ of error should abate ; that the plaintiffs in error, immediately thereafter, prayed out the present writ of error, which was served on the defendant in error, on the same 7th day of *October ;* that on the 16th day of that month, the defendant in error procured the officer, who had served the writ of error on him, to levy the execution granted by said *Randall* and *Thomas* on their judgment, and, by virtue thereof, put said *Dutton* and *Willoby* out of possession of the premises, and put said *Tracy* into possession of the same ; that until said 16th day of *October,* no proceedings under said execution were had, except only, that the officer, as he stated in his return, on the 1st day of that month, repaired, by *Tracy's* direction, to the premises, and commenced the levy of the execution, by entering upon the premises, and making demand of the possession thereof: Whereupon said *Dutton* and *Willoby* prayed, that such irregular levy of the execution, so made, might be set aside, and they restored to the possession of the premises.

The case was then reserved, on the questions of jurisdiction and restitution, as well as on the matters assigned for error, for the advice of all the Judges.

At the term of the supreme court of errors, held at *Norwich,* in *October,* 1820, *Goddard* and *Brainard,* for the defendant in error, contended, That a writ of error will not lie to revise the decision of a court not proceeding according to the course of the common law ; the only mode of correcting any error that may have occurred, in such case, being by

*New-London,* *certiorari ;* which is not a matter of right, but is granted at
July,
1821.
discretion, and on which the proceedings of the court below
will not be quashed for trivial mistakes, or may be quashed in

Dutton
*v.*
Tracy.
part, and affirmed as to the residue.    *Groenelt* v. *Burwell,* 2
*Ld. Raym.* 469.    *Commonwealth* v. *Ellis,* 11 *Mass. Rep.* 466.
*Melvin* v. *Bridge,* 3 *Mass. Rep.* 305.    *Edgar* v. *Dodge,* 4
*Mass. Rep.* 670.    *Commonwealth* v. *Blue-Hill Turnpike Cor-
poration,* 5 *Mass. Rep.* 420.    The court in question is one
created by statute, for a special purpose ; its process is sum-
mary ; it tries the issue between the parties, by a jury con-
sisting of from fourteen to eighteen persons ; its object is not
to settle a question of *title,* but to restore the *peace* of the
neighbourhood ; and having performed its office, it ceases to
exist as a court.    If the judgment should be reversed, it could
not be entered for trial in the superior court, because the
course of proceeding prescribed by the statute, is unknown
to that court ; nor could it be remanded to the court to which
it was originally brought, for that court is dissolved.    The
members of that court were on the footing of commissioners :
a certain duty was given to them to discharge ; and that was
all that they could do.    The court began and ended with
the proceeding.

*Cleaveland* and C. *Perkins,* for the plaintiffs in error, insis-
ted, that the superior court had jurisdiction of this writ of
error.    The statute gives the superior court "jurisdiction
of all writs of error, brought for reversal of any judgment of
the county court, or *any inferior court,* or of an assistant or
justice of the peace, in civil or criminal causes." (*a*)    The
statute does not mention *courts of record ;* nor has the distinc-
tion, prevailing in *England* and elsewhere, between courts of
record and inferior courts not of record, been adopted here.
A justice of the peace is, in this state, a court of record ; and
so are two justices, whenever they are authorized to hold a
court.    The persons composing the court in question, acted,
either as an inferior court, or as justices of the peace.    It had,
according to the *English* law, the distinguishing mark of a
court of record, *viz.* the power to fine and imprison. *Sect.* 10.
But if there could ever be a reasonable doubt on this point,
it has long since been removed, by judicial determina-

(*a*) *Stat. p.* 260. ed. 1808.    See also *p.* 205. *tit.* 42. *c.* 1. *s.* 24.

tions.      *Stuart* v. *Pierce*, 1 *Root* 75.      *Bird* v. *Bird*, 2 *Root*
411.      *Bull* v. *Olcott*, 2 *Root* 472.

It is not clear, that the cause, if reversed, could not be en-
tered in the superior court for trial.   When entered, it must
be tried like other causes before the same court.   A cause,
which, before a justice of the peace, must be tried by *him*,
must, when entered in the superior court, be tried by a *jury*.

At the present term, the other points in the case were dis-
cussed.   *Cleaveland* and *H. Strong*, for the plaintiffs in er-
ror, contended, 1.   That a *qui tam* action would not lie in this
case.   This form of action is adapted only to cases where a
forfeiture is given to the party injured, and a fine, payable
into some public treasury, and corporal punishment, are inflic-
ted. 2 *Swift's Syst.* 183.   But the statute on which this action
is brought, neither gives damages to the party, nor inflicts
corporal punishment.   The first and tenth sections provide
for the suppression and punishment of the offence ; and are of
the same import with the *English* statute of the 15 *Rich.* 2. *c.*
2. But in *England*, the proceeding is by *indictment*, even
when a restitution is sought. *Bac. Abr. tit.* Forcible Entry
and Detainer. (E.) It is so, also, in *New-York. The People* ex
rel. *Corless* v. *Anthony*, 4 *Johns. Rep.* 198.

2. That no legal recognizance was taken in this case.
The two justices, who signed the warrant, were not, at that
time, a court, and could not *act jointly* in taking a recogni-
zance.

3. That the process was defectively served ; first, because
it was *forthwith*, not giving *any* of the defendants six days no-
tice ; and secondly, because it was served, even in that man-
ner, on *four* only out of the six defendants named.

4. That the empannelling of the second jury was without
authority and irregular ; first, because the statute, by which
alone this proceeding is regulated, provides for the summon-
ing of eighteen jurors ; and these are the only persons com-
petent to give a verdict ; secondly, because the officer, who
served the second *venire*, was disqualified, having an interest
in the event of the suit ; thirdly, because the second jury
were not of the *vicinage*, but from other towns.   The stat-
ute requires, that they should be " persons *dwelling near
unto*" the estate forcibly entered upon or held. *Sect.* 6.

5. That the lease of a *barn* from *Tracy* to *Willoby*, offered
by the complainant, was improperly admitted ; first, because

a lease of the barn only, which was no part of the premises, furnished no evidence that *Tracy* was, at any time, in possession of the land in question ; and secondly, because if the barn had been a part of the premises, the evidence would have been irrelevant, as it is immaterial who was in possession in 1803.

6. That the record in the case of *Tracy* v. *Ward,* also offered by the complainant, was improperly admitted. It was a summary proceeding, of a different nature from this ; founded on a different state of facts ; and between other parties. It was inadmissible to prove any right of property or possession. The officer's return that he put *Tracy* in possession, was not evidence ; because the officer might have been sworn and examined as a witness.

7. That the copy of the deed from *Fitch* to *Apthorp,* offered by the defendants, was improperly rejected. They offered this document, not to prove title in themselves, but to rebut the complainant's right of possession ; and for this purpose, it was pertinent and proper. The defendants could not be required to produce the *original* deed ; they not being heirs of the grantee, nor claiming under him, but entire strangers to his title.

8. That evidence was improperly given to the jury *out of court.*

9. That the court erred in taxing against the defendants the costs of both trials.

10. That the two plaintiffs in error, who had been dispossessed of the land, under an execution, levied in defiance of a *supersedeas,* were entitled to a restitution. That a writ of error is, in general, a *supersedeas,* will not be controverted. If *this* writ of error was not a *supersedeas,* it was because a former one had been granted and served. But, in the first place, a second writ of error is a *supersedeas* in all cases, except where the first was abated, or put an end to, by the act of the plaintiff in error ; and the only reason why it is not so in that case, is, that it would enable him at pleasure to prolong the delay. *Birch* v. *Triste,* 8 *East* 412. Secondly, the first writ of error having been granted before judgment rendered, was of no avail whatever—was a mere nullity—and the present is to be regarded as the only writ of error. This is the only ground on which the judgment of the superior court, dismissing the first writ of error, can be vindicated.

If the levy of the execution was irregular, restitution is a

matter of course. *Somerville* v. *White*, 5 *East*, 145. *The People* v. *Shaw*, 1 *Caines' Rep.* 125. *Shotwell's case*, 10 *Johns. Rep.* 304. *Meagher* v. *Vandyck*, 2 *Bos. & Pull.* 370. *Ludlow* v. *Lennard*, 2 *Ld. Raym.* 1295. *Lane* v. *Bacchus*, 2 *Term Rep.* 44. *Miller* v. *Newbald*, 1 *East* 662. *Smith* v. *Nicholson*, 1 *Wils.* 16.

New-London,
July,
1821.

Dutton
*v.*
Tracy.

*Goddard* and *Brainard*, for the defendants in error, contended, 1. That a *qui tam* information was the proper remedy. Wherever the public have an interest, as well as the party, this form of proceeding is the proper one. *Bac. Abr. tit.* Actions qui tam. A. It has had the sanction of long and uniform practice in this state ; and as it is a question of practice, it is peculiarly proper that the practice should decide it. The *New-York* practice of proceeding by *indictment*, in the name of *the people*, would be impracticable here ; as two justices *unus quorum*, have no power to call in a grand-jury.

2. That the recognizance entered for prosecution, was properly taken. It was the duty of the complainant to give this security, on praying out the process ; and of the magistrates to require it, before they issued the process. It was given *to* the adverse party, in the presence of the magistrates. If both magistrates required this to be done, it was no more than the law required ; and it surely cannot vitiate the transaction, that both were *present*, and *certified* what was done.

3. That the service was good. The process on a *qui tam* information is always *forthwith ;* no term of notice previous to the sitting of the court, being necessary. Nor can the persons arrested object to the process, that others, charged with the same criminal acts, have been suffered to escape. This is not a matter of *contract :* the claim is not founded on a *joint undertaking*.

4. That the empannelling of the second jury, after the first had been dismissed, was proper ; and the discharge of the first jury was rendered necessary, by their inability to agree on a verdict. They could not be compelled, by physical force, to agree. It would be preposterous to hold, that the public peace might be violated with impunity, and the party injured left remediless, because the jury first summoned could not agree.

5. That the officer, who summoned the second jury, was not disqualified to perform that service. His liability for a false return on an execution previously served by him, could

not be affected, by the event of this cause. There is, indeed, no substantive allegation, that he had made a false return. Further, this is the only case in which a sheriff is empowered to summon a jury of his own nomination; and the statute (a) has guarded the exercise of his power in such manner as the legislature deemed necessary. The court cannot *extend* these provisions. But the sheriff, in this case, was clearly not " *interested or related*," in the manner specified in the statute.

6. That no legal exception to the qualifications of the jurors, appeared. They might be of the *vicinage*, or in the words of the statute, " *near unto* the house, lands, &c. entered upon or held"—though from other towns than that where the estate in controversy lay. There might have been " fifty freeholders qualified to act as jurors," in *Norwich*, who were still more remote from the *locus in quo* than the jurors summoned from *Bozrah* and *Franklin*. The boundaries of the town have no connexion with the limits of the vicinage.

7. That the the lease of the barn, accepted by *Willoby* from *Tracy*, was properly admitted, to evince the possession of *Tracy*. The barn stood on the land in question; and an act of ownership over the former must have been necessarily applicable to the latter. If the transaction was remote, the evidence would have the less weight; but it would not be, for that reason, irrelevant.

8. That the record of Justice *Huntington* in the case of *Tracy* v. *Ward*, was properly received, not as a proof of title —and it was not offered for that purpose—but as *prima facie* evidence of a collateral fact, stated in the officer's return, *viz.* that he put *Tracy* in possession of the premises. The objection, that it was *res inter alios acta*, is here of no avail.

9. That the judgment complained of ought not to be reversed, because the court rejected the copy of a deed from *Fitch* to *Apthorp*. If it was offered to prove title, the answer is, that the title was not in issue. If it was pertinent for any other purpose, the facts to shew its pertinency do not appear, and its rejection is not here a ground of error. Why the court below rejected it, does not appear: it is sufficient, that it does not appear that it was improperly rejected.

10. That the evidence given to the jury on or near the premises, did not vitiate the proceedings; first, because it

(a) See *Sect. 9.* of the act relating to " Forcible Entry and Detainer," *p.* 348. ed. 1808.

was given under the sanction of the court, in the presence of one of its members, attended by the sheriff; and secondly, because if irregularly given, it could do no harm, as it was, immediately afterwards, regularly given in court.

11. That the taxation of costs, in this case, was purely a matter of *discretion*, and cannot be made a subject of error. The statute (*Sect.* 4.) expressly authorizes the taxation of costs, without specifying the items or the amount.

12. That the superior court will not interfere, in a summary way, to put the plaintiffs in error in possession. We have no practice authorizing such a proceeding, in any case. In *Bird* v. *Bird*, 2 *Root* 413. the court refused to restore the plaintiff in error to the possession of the premises, even after reversal. But in this case, there is no ground whatever for the interposition of the court; as there was no *supersedeas* of the execution, and it was, therefore, regularly executed. A second writ of error is never a *supersedeas*, except where the first was terminated, by the act of God, or by a circumstance which the plaintiff in error could not controul. *Birch* v. *Triste*, 8 *East*, 412, 3. Here, it is wholly the fault of the plaintiffs in error, that their first writ of error was abated.

HOSMER, Ch. J. The questions raised in this case, although numerous, are not attended with much difficulty. My opinion upon them I shall express, in the order in which they have been made, either silently alluding to the facts, or stating such as the occasion may seem to demand.

In this state, the distinction recognized in *Westminster-Hall*, between courts of record and not of record, has never been adopted. All our courts, from the supreme court to that of a justice of the peace, are courts of record; and, hence, the act for regulating trials on writs of error has provided, that "the Supreme Court shall have jurisdiction of all writs of error, brought for the reversal of any judgment of the county court, or any inferior court, or from any assistant or justice of the peace." (*Stat.* p. 260. ed. 1808.) More than thirty years since, in the case of *Stuart* v. *Pierce*, 1 *Root* 75. it was determined, that a writ of error was sustainable to reverse the judgment of two justices, upon the statute for a forcible entry and detainer. In *Bird* v. *Bird*, 2 *Root* 411. and in *Bull* v. *Olcott*, 2 *Root* 472., similar judgments were reversed, by the superior court, on writs of error; and so far as I have knowledge, this practice has been invariably uniform. The statute

*New-London, July, 1821.*

Dutton v. Tracy.

*New-London,*
July,
1821.

Dutton
*v.*
Tracy.

before mentioned, by its obvious construction, authorized these determinations; and the practice under it has been too firmly established, at this late hour, to admit of a question. These observations dispose of the objection made against the proceeding in this case by writ of error.

The prosecution of the defendants below, by information *qui tam,* is believed to be sanctioned by usage, and free from objection. Process by *indictment,* pursuant to the practice in *England,* and in a neighbouring state, has never been resorted to; and for aught that I can discern, is impracticable. A grand jury cannot be convened, by two justices; the statute conferring the power of causing them to be summoned, applying to the superior and county courts only. (*Stat.* p. 373. ed. 1808.) The restriction of informations *qui tam,* to those cases only, in which corporal punishment may be inflicted, would impugn the principle, on which prosecutions of this nature are had, upon the statute against breaking the peace, and on the law to prevent disorders in the night season. In both these instances, the proceeding is by information *qui tam,* when the offender is not liable to corporal punishment. That the state has an interest in the prosecution of the persons guilty of a forcible entry or detainer, appears from the 10th section of the statute, (*p.* 348. ed. 1808.) which enacts; " that any assistant or assistants, justice or justices, holding *such courts of enquiry,* may impose a fine on every offender committing such force, not exceeding the sum of three dollars thirty-four cents, and bind him or them to the good behaviour;" and the interest of the individual forcibly disseised in the same process, is manifest from this consideration; that the same court of enquiry, which fines the offender, causes him, by the same judgment, to be repossessed of his property. The same process, operating *diverso intuitu,* originated from the practice of courts in this state, and is one of our peculiarities. Much of the practice here, both in criminal and civil suits, is appropriate to ourselves, and not consonant to that of *Westminster-Hall;* and " the motley kind of action" in the case before us, is supported by usage and analogy, and warranted by the statute. Although the information *qui tam,* is a process authorised by the law, as the court of enquiry *may* fine; yet it is not indispensible that they *should* fine, to vindicate their judgment. The law is *penal;* and therefore, on this point,

is not imperative. Inasmuch as no fine was assessed, the writ of error was brought by the proper persons. (*a*)

New-London, July, 1821.

Dutton *v.* Tracy.

The bond of recognizance, taken by the two justices, was undoubtedly legal. From the mode of issuing the process, required, as it was, to proceed from two assistants, or two justices *quorum unus*, (*Stat. p.* 347. ed. 1808.) it became their duty to take the bonds.

The injury done to the complainant, by the defendants, was joint and several; and to the service of the process it is no legal objection, that all the trespassers were not arrested. The process was served on all who could be found.

The dismissal of the first jury was rendered necessary, to prevent a failure of justice, by the impossibility of their rendering any verdict. They had had the case before them two days, and had been returned to three considerations; and then declared in open court, *that they could not agree.* In the exercise of a sound discretion, and in pursuance of an established practice familiar to every member of the profession, the papers were received from the jury, and they were dismissed. This proceeding was legal and unexceptionable.—— The empanelling of the second jury was, therefore, indispensible.

It is said, that the array should have been quashed, by reason of the disqualification of the sheriff to serve the *venire*. He had returned, that he put *Tracy* into possession of the land in question, by virtue of an execution; and this return the defendants claimed to be false. Admitting the fact, what was his interest or bias, in the summoning of a jury? The result of the information by *Tracy*, either way, could not conduce to his benefit or disadvantage; and in all events, the presumption of bias, is *potentia remotissima*.

The jury, by the special provision of the statute, must consist of indifferent freeholders " dwelling *near* unto the lands entered upon," (*b*) without reference to the town in which they have their residence; and, for aught that appears, they were precisely of this description. No allegation, that there

(*a*) The law has been altered, in this respect, by the late revision of the statutes; the remedy now being a complaint, in the name of the party injured, to regain possession, and an action of trespass for the damages. These proceedings, which are merely civil, will not preclude a criminal prosecution, on the part of the public, for a breach of the peace. *Stat. tit.* 37. *p.* 237. *R.*

(*b*) This clause is omitted in the late revision. *Stat.* 236. *R.*

*New-London,*
July,
1821.

Dutton
*v.*
Tracy.

were competent freeholders dwelling "*nearer*" the land, has been made ; and in the absence of such an averment, the presumption is, that the justices exercised their jurisdiction soundly.

The lease of the barn, given by *Tracy* to *Willoby*, necessarily includes the land on which it was ; and although the barn is not *now* on any part of the land in question, it is not denied that it was upon the land, when the lease was made and delivered. The delivery of this instrument, was the exercise of an act of ownership over a part of the premises, and conduced to shew the possession of the lessor at that time. In point of weight, the testimony was feeble, and probably had little effect ; but I am not prepared to say, that it was utterly irrelevant, and of consequence, it was rightly admitted in evidence.

The record in *Tracy* v. *Ward*, to which the defendants were no party, was inadmissible to prove title ; nor was it adduced for that purpose. A judgment had been rendered against the defendant, *Ward*, upon which an execution issued, commanding the sheriff to put the plaintiff, *Tracy*, in possession of the land in question ; and the sheriff made his return, shewing his obedience to the writ. The sole question arising is, whether the return is evidence in this case, to prove a delivery of the possession. As relative to strangers, it is *prima facie* evidence of the facts stated in it ; credence being due to the uncontradicted official act of the sheriff, when third persons are concerned. *Gyfford* v. *Woodgate*, 11 *East* 296.

The deed of *Fitch* to *Apthorp*, to prove title in the latter person, was rightly rejected. The justices have power to summon a jury, to try the forcible entry and detainer complained of ; and if the same be found by the jury, besides the fine on the offender, they are to make restitution, by the sheriff, of the possession, *without enquiring into the merits of the title ;* for the force is the only thing to be tried, punished, and remedied by them. 2 *Bla. Comm.* 148. 2 *Swift's Syst.* 71.

Of the irregularity of the testimony given to the jury out of court, there cannot be a question ; and if there existed a doubt, whether it had any influence over their determination, I should consider it as vitiating their proceedings. It is admitted, on the record, by the defendants, that the *same evidence* was afterwards given before the court and jury ; and this identity not being disputed, no disadvantage has arisen to the defendants ; and the irregularity has had no effect.

To the taxation of the costs, the objection is unfounded.
The statute confers on the court of enquiry, an authority " to
" tax bills of cost against such persons as before them shall be
" convicted of forcible entry or detainer ;" and there having
been no rule of taxation prescribed, it necessarily was matter
of discretion.

It follows as the result, that no error has intervened.

The plaintiffs in error have moved the court to order resti-
tution of the possession, obtained of the land in question, by
an execution, which issued in contravention of a *supersedeas*
by writ of error.   The novelty of the application, if there
were not a short ground on which it must be decided, would
render it necessary critically to investigate the authority of
the court on the subject in question.   It would, likewise, be
a material enquiry, whether the supposed *supersedeas* actual-
ly existed.   But, leaving these considerations as being un-
necessary, it appears on the record before us, that the com-
plainant, with force and strong hand, was dispossessed of his
property, by the persons moving for restitution of the posses-
sion.   I cannot think, that it would be the exercise of a sound
discretion, to dispossess a person of land, who, on the record
before the court, was actually possessed, until by a breach
of the peace, he was forcibly ousted.

My opinion is, that the plaintiffs in error take nothing by
their motion.

The other Judges were of the same opinion on all the
points.

Plea to the jurisdiction overruled ;
Judgment affirmed ; and
Motion for restitution denied.