HARRY S. HOTCHKISS *vs.* JULIA DALTON, ADMINISTRATRIX.

A writ of error to the Superior Court will lie from the judgment of a county commissioner and a justice of the peace, in forcible entry and detainer.

A case of forcible entry and detainer was tried before a county commissioner and a justice of the peace, under the statute constituting them a tribunal for that purpose, and judgment rendered for the plaintiff. The defendant tendered a bill of exceptions to be allowed by the court. The judges wished time to examine it and proposed that it be allowed at a future time as of that day, to which neither party objected. Afterwards they submitted to the parties a bill of exceptions which was not satisfactory to either and it was proposed that a new one be prepared. This was done, and at a later day both parties appeared before them and were heard upon it, and in the presence of both parties the bill was signed by the commissioner and the justice, no one objecting. At this time the term of office of each had expired, the justice having been re-elected, but the commissioner not. Held that, whatever question there might be about the power of the commissioner to act in the matter, the parties had waived the objection.

The justice having been re-elected had full power to sign the bill.

Whether his signature alone in his own behalf and that of the commissioner would have been sufficient: *Quære.*

The practice is, where a court consists of several judges, for the presiding judge to allow the bill of exceptions.

A motion to strike a case from the docket for want of jurisdiction may be made at any stage of a case.

WRIT OF ERROR from the judgment of a county commissioner and a justice of the peace upon a complaint for a forcible entry and detainer; taken to the Superior Court in New Haven County. Judgment reversed by that court, and motion in error by the defendant to this court. The case is sufficiently stated in the opinion.

*J. O'Neil,* for the plaintiff in error on the motion, (defendant in error on the writ of error.)

*S. E. Baldwin,* for the defendant in error on the motion, (plaintiff in error on the writ of error.)

LOOMIS, J. As a defence to the writ of error in this case the defendant filed two separate pleas—"nul tiel record" and "nothing erroneous." The last was wholly abandoned on the trial and the defendant now concedes that there is error apparent on the record. The first plea involved an inquiry of fact as to the existence of such a record, and it was decided against the defendant. At first blush, as claimed by the counsel for the plaintiff, this would seem to dispose of the entire case. But upon the hearing no attempt was made by either party to confine the inquiry to a mere inspection and examination of the record produced, and parol evidence was received without objection, of the time, place and circumstances of the allowance of the bill of exceptions, in order to determine whether its allowance by the county commissioner and justice was lawful; and in this way a question of law was brought into the record, upon which in part the motion in error is founded. For the purposes of this case we think it best to decide the point as presented, waiving the question whether it was strictly admissible under the plea referred to, as the parties below made no such question. The other ground of error now relied upon also first arose during the trial in the Superior Court upon the defendant's motion to erase the case from the docket, upon the ground that a writ of error would not lie in forcible entry and detainer. The plaintiff contends that the motion came too late, but as the objection goes to the jurisdiction of the court over the subject matter, we think, under the decisions in this state, it was open to inquiry at any stage of the trial. The two questions presented by the defendant's motion in error we will therefore consider.

First. Does a writ of error lie from the judgment of a county commissioner and a justice of the peace in forcible entry and detainer?

If this was a new question the argument in behalf of the defendant would have much more effect than it can have now. It will be difficult to name any matter in the whole history of our judicial proceedings more ancient, more uniform and more firmly established than the practice of bringing writs of error to the Superior Court in cases of forcible entry and detainer. It was not a practice that crept into court stealthily and unobserved, and then kept its place simply because nobody ever challenged it; but the right and propriety of the practice were challenged as early as 1789, in the case of *Stuart* v. *Pierce*, 1 Root, 75, where the Superior Court held that a writ of error was sustainable to review the judgment of two justices upon the statute for forcible entry and detainer. Afterwards the practice was acquiesced in, and similar judgments were reversed on writs of error in *Miner* v. *Knowles*, 1 Root, 142, *Bird* v. *Bird*, 2 Root, 411, and *Bull* v. *Olcott*, 2 Root, 472.

But so far the practice grew up, it is said, without any written constitution to prescribe what should be regarded as a judicial tribunal.

This suggestion however would seem to be fully met by the fact that after the adoption of our present constitution the case of *Dutton* v. *Tracy*, 4 Conn., 79, came before the Supreme Court of Errors in the year 1821. The transaction itself occurred in July, 1819, (which was after the adoption of the constitution, and not before, as claimed in the brief for the defendant.) It was a complaint *qui tam*, under the statute relative to forcible entry and detainer, brought originally before "a justice of the quorum" and a justice of the peace, who then had jurisdiction; and to reverse the judgment a writ of error was brought to the Superior Court, where the defendant pleaded in abatement to the jurisdiction on the ground that the judgment in proceedings for forcible entry and detainer was not the subject of revision in a higher court by writ of error. The Supreme Court of Errors decided that the Superior Court had jurisdiction.

In the opinion delivered by HOSMER, CH. J., the decision was placed on the ground that the statute authorized it, and

that the practice had become too firmly established to admit of a question.

But it is claimed in behalf of the defendant that all that portion of the statute on which the decision was founded has had no existence since the revision of 1821, and consequently that the decision has become inoperative. It is true that there has been a change in the statutes, and the question is whether the change was so radical as to deprive the Superior Court of the jurisdiction it previously had. The statute in force at the time of the above decision provided that "the Superior Court shall have jurisdiction of all writs of error brought for the reversal of any judgment of the County Court, or any inferior court, or from any assistant or justice of the peace." Statutes, edition of 1808, p. 260.

In the revision of 1821 a change was made. The subject was embraced in two sections. In section 9, page 138, it was provided, among other things, that the Superior Court should have jurisdiction "of all causes, real, personal and mixed, of a civil nature between party and party, which shall be brought before it by appeal, writ of error, scire facias, complaint, petition or otherwise, according to law." And in section 69, p. 54, it was provided that "writs of error may be brought to the Superior Court from the judgments of the county and city courts, and of justices of the peace, for any error in the same."

And the same provisions substantially are found in all the subsequent revisions, down to that of 1875, omitting county courts after they were abolished.

The statutes in force at the time of the proceedings now in question are found in the revision of 1866, page 44, sec. 207, and page 220, sec. 18.

The only change in the statutes since the decision in *Dutton* v. *Tracy*, which can have any significance in the argument, consists in dropping the words "inferior court" and substituting "according to law," and making a county commissioner one member of the court. Whether the omitted words had any controlling effect in the decision referred to we are not able to say, but without them, as the law then stood, we think

the result must have been the same; for forcible entry and detainer cases were then tried either before two justices or two assistants, or one justice and one assistant; and we find both justices and assistants expressly mentioned in the statute relative to writs of error. After the revision of 1821 assistants were no longer chosen, and the cases in question were at first heard before a judge of the county court and a justice of the peace, and afterwards, as at present, before a county commissioner and a justice of the peace.

But a justice of the peace has always been, since assistants were no longer chosen, a necessary part of the court for the trial of these cases; and the statute has always provided for a writ of error from any decision of a justice of the peace; and if we give a very liberal construction to the statute it may still apply, though a commissioner is now associated with the justice.

Again, the substituted words, "according to law," should have some effect. Any law, common or statute, may be included, and as the practice of making this inferior court subject to proceedings in error had been coeval with the institution of Superior Courts, it may have been taken for granted by the legislature who made the change that the "law" was sufficiently embodied in this long continued practice, and that it would still authorize such proceedings in error.

But in determining the effect, at the present time, of the change in the statutes, we are allowed by the rules of construction to look beyond the narrow and strict meaning of the words omitted or supplied, and consider the fact that under the statutes as they existed at the time of the transaction in question the Superior Court has uniformly taken cognizance of such writs of error. And in the following cases of forcible entry and detainer, brought for revision from the Superior Court to the Supreme Court of Errors, the rightful jurisdiction of the former has been accepted and recognized, without hesitation, by the latter. *Phelps* v. *Baldwin*, 17 Conn., 209, decided in 1845; *Raymond* v. *Bell*, 18 Conn., 81, decided in 1846; *Quinnebaug Bank* v. *Tarbox*, 20 Conn., 510, decided in 1850; *Lee* v. *Stiles*, 21 Conn., 500, and *Stiles* v.

*Homer*, 21 Conn., 507, decided in 1852; *Gray* v. *Finch*, 23 Conn., 495, decided in 1855; and *Hale* v. *Wiggins*, 33 Conn., 101, decided in the year 1865.

Many of the above cases were very well considered, and in some it will be seen that the ingenuity of most eminent counsel was evidently taxed to the utmost to suggest technical objections against the maintenance of the writs, and yet the jurisdictional argument was not used in any instance. Such long continued and universal acquiescence in the practice in question cannot be ignored in the construction of the statute referred to. In revising and reconstructing the statutes it is always an object to be accomplished if possible, to condense the language by leaving out unnecessary words; and we have no doubt that the words "inferior court," in the revision of 1821, were omitted for this purpose, with no thought that it would take away from the Superior Court the right to revise, on writs of error, the proceedings in forcible entry and detainer, which are usually more complicated than ordinary cases before justices of the peace, and in which error is more likely to be committed. We cannot suppose that the legislature ever intended to make the justice and county commissioner final judges of the legality of their own decisions; and as we have never adopted in our practice the writ of certiorari, we think a liberal construction ought to be given to the statutes in question, and that, so construed, they still confer jurisdiction on the Superior Court in the cases mentioned.

Second. The remaining question is, whether the bill of exceptions was lawfully a part of the record in this case.

It is objected that it was not lawful, because it was not signed and allowed by the county commissioner and justice of the peace, before whom the trial was had, till after their respective terms of office had expired.

The justice however was re-elected, and held the office at the time, and there is no doubt about his right to sign and allow the bill of exceptions so far as his own act could do it. But whether his signature alone, in his own behalf and that of the commissioner, would suffice, we do not find it necessary to determine.

Where a court consists of several judges, the practice has been for the presiding judge to allow the exceptions. Swift's Evidence, 168; Buller's Nisi Prius, 315.

The bill of exceptions was tendered while the court was regularly in session. There was no fault on the part of the plaintiff. The court wanted time to consider it, and proposed to the parties to allow it at some future time, *nunc pro tunc.* Both parties were present and made no objection to this course.

In August the court submitted to the parties a bill of exceptions, but it did not meet the wishes of either party, and it was proposed that a new bill be prepared. This was afterwards done, and in February following both parties appeared again before the commissioner and justice, and were heard with witnesses and counsel in regard to the bill of exceptions; and then, in the presence of both parties, the present bill was signed and allowed, neither party objecting to the authority of the commissioner for that purpose. Under these circumstances we think the defendant's objection ought not to prevail.

There is no error in the judgment complained of.

In this opinion the other judges concurred.